IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RACHEL SAWYER and DUSTIN ARNOLD, | Case No. 3:18-cv-02128-SB |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER; OREGON DEPARTMENT OF HUMAN SERVICES CHILD WELFARE; JAMES COUGHLIN, M.D.; SUNSHINE CRONE; and CAROLINA CABALLERO, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

This matter comes before the Court on motions to dismiss filed by Legacy Emanuel Hospital & Health Center ("Legacy Emanuel"), James Coughlin, M.D. ("Dr. Coughlin"), and Sunshine Crone ("Crone") (collectively, the "Legacy Defendants"); and the Oregon Department of Human Services ("DHS") and Carolina Caballero ("Caballero") (collectively, the "State Defendants").[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and all

---

[1] The Court will refer to the Legacy Defendants and State Defendants collectively as "Defendants."

PAGE 1 – OPINION AND ORDER

parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). For the reasons discussed below, the Court grants both motions to dismiss.

## BACKGROUND[2]

On September 19, 2016, Sawyer went into labor on a flight from Florida to Portland, Oregon. (Compl. ¶ 8.) She was transported to Legacy Emanuel upon arriving in Portland. (Compl. ¶ 10.)

During her initial examination, Sawyer informed the hospital staff that she did not "want any technology [used] during her pregnancy"; she was not interested in having a nurse "do a heartbeat radar for the baby and an ultrasound"; she wanted the nurse to use a "stethoscope to check the baby's heart rate"; she wanted to "stay in a squatting position for a lotus birth and allow the baby to come out on its own" in the event "the baby was breech"; she was not interested in a vitamin K shot, an eye ointment, or vaccinations for the baby; and she wanted to wait for Arnold to arrive from southern Oregon before "deciding whether or not to allow an ultrasound." (Compl. ¶¶ 11-12.) After Sawyer's initial examination was completed, the hospital accommodated Sawyer's request to be "allowed to sit in a large tub while having her contractions." (Compl. ¶ 13.)

In the early morning hours of September 20, 2016, Sawyer agreed to allow her doctor to perform an ultrasound. (Compl. ¶ 15.) Based on the results of the ultrasound, the doctor concluded that "the baby was breech and started saying 'C section, C section, C section.'"

---

[2] The following facts are taken from Rachel Sawyer ("Sawyer") and Dustin Arnold's ("Arnold") (collectively, "Plaintiffs") complaint, which the Court accepts as true and construes in the light most favorable to Plaintiffs for the purposes of reviewing Defendants' motions to dismiss. *See Doe v. Nestle, S.A.*, 906 F.3d 1120, 1123 (9th Cir. 2018) (stating that, in reviewing a motion to dismiss for failure to state a claim, "'[a]ll factual allegations in the complaint are accepted as true, and the pleadings construed in the light most favorable to the nonmoving party'") (citation omitted).

(Compl. ¶ 16.) Sawyer responded that she did not want to have a Caesarean section ("C-section") and asked if anyone "had any experience delivering a breech baby vaginally and was told 'no.'" (Compl. ¶ 17.) "At that moment, before an epidural could be administered, the baby came out with only its head and left arm still in the birth canal, at which time the staff removed the squat bar [that had been provided] and [Sawyer] was forcibly moved to her back and against her will." (Compl. ¶ 18.)

During the final stages of delivery, Plaintiffs heard a "snap" and the attending physician confirmed that the baby's arm broke when he "reached up and pulled on the baby." (Compl. ¶ 19.) Plaintiffs requested a "delayed cord clamping," but their physician "immediately clamped and cut the cord and the baby was whisked away" before Sawyer could find out the baby's gender. (Compl. ¶ 20.) In the recovery room, Sawyer was "asked to sign forms regarding declining the eye ointment and vitamin K shot." (Compl. ¶ 21.)

Later that same morning, Crone, a social worker employed by Legacy Emanuel, interviewed Plaintiffs. (Compl. ¶¶ 5, 23.) Based on her interview, Crone determined that Plaintiffs needed a car seat, but it was otherwise "safe to discharge the baby into" Plaintiffs' care. (Compl. ¶ 23.)

A few hours later, Dr. Coughlin, a pediatrician employed by Legacy Emanuel, visited Plaintiffs. (Compl. ¶¶ 4, 24.) Dr. Coughlin asked why Plaintiffs "did not allow an ultrasound" and "demand[ed]" that Sawyer "immediately submit to a blood test," even though Plaintiffs believed that state law allowed the test to "be performed a[s] late as 10 days after birth." (Compl. ¶ 24.) Dr. Coughlin also questioned Plaintiffs "about their decision not to vaccinate the child." (Compl. ¶ 25.) Ultimately, Dr. Coughlin rejected Sawyer's request to revisit the blood test matter the following day since she was tired and hungry, and Dr. Coughlin informed Plaintiffs that

PAGE 3 – OPINION AND ORDER

Sawyer could either submit to a blood test or "he would be calling social services." (Compl. ¶¶ 26-28.)

Shortly thereafter, a DHS employee (Caballero) and five "armed security guards" entered Plaintiffs' hospital room and without any explanation took custody of their baby ("I.S."). (Compl. ¶¶ 7, 28.) Once I.S. was removed from Plaintiffs' room, Caballero instructed Legacy Emanuel's hospital staff to proceed with "regular treatment," and the staff responded by administering a "Vitamin K shot, eye ointment, a hepatitis B vaccine, and immunoglobulin." (Compl. ¶ 29.) DHS also had I.S. placed in a separate room and only allowed Sawyer "to see her under supervision while she was feeding her, for no more than 30 minutes at a time." (Compl. ¶ 30.)

On September 21, 2016, Sawyer learned that a court hearing was set for the next day, arrangements were being made for her to appear by telephone because she had not been discharged from the hospital, and DHS had taken custody of I.S. based on a report of "medical neglect." (Compl. ¶ 31.)

On September 22, 2016, Sawyer and I.S. were discharged from the hospital, DHS placed I.S. in a foster home, and "the court continued the temporary protective custody and continued the matter until September 26, 2016." (Compl. ¶¶ 32-33.) At the September 26, 2016 hearing, the court "maintained temporary custody with [DHS] but reunited physical custody of the baby with" Sawyer. (Compl. ¶¶ 33-34.)

On November 1, 2016, a judge presided over an adjudicatory hearing and the petition filed against Plaintiff "was dismissed and full custody of [I.S.] was returned to" Plaintiffs.[3] (Compl. ¶ 35.)

## ANALYSIS

### I. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted) (citing *Iqbal*, 556 U.S. at 678)).

### II. DISCUSSION

Plaintiffs filed this action on September 20, 2018, alleging violations of their Fourth and Fourteenth Amendment rights and seeking damages under 42 U.S.C. § 1983 and OR. REV. STAT. § 419B.090(4). The Legacy Defendants move to dismiss Plaintiffs' complaint in its entirety and the State Defendants move to dismiss Plaintiffs' complaint, in part.[4] (Legacy Defs.' Mot. at 2;

---

[3] The Court assumes the 2018 dates in the complaint are typographical errors. (*See* Compl. ¶¶ 35, 39, referring to the "November 1, 2018" hearing and "petition filed with the juvenile court on September 21, 2018").

[4] The State Defendants have not moved to dismiss Plaintiffs' first claim against Caballero. (*See* State Defs.' Mot. at 2.)

State Defs.' Mot. at 2.) For the reasons explained below, the Court grants Defendants' motions to dismiss.

### A. The Legacy Defendants' Motion to Dismiss

#### 1. Section 1983 Claims

Plaintiffs bring two § 1983 claims against the Legacy Defendants, alleging that they violated Plaintiffs' Fourth and Fourteenth Amendment rights. The Legacy Defendants move to dismiss Plaintiffs' § 1983 claims on the ground that Plaintiffs have failed adequately to plead state action.

##### a. Applicable Law

"To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (citing *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)). "The 'under color of law' requirement under § 1983 is the same as the Fourteenth Amendment's 'state action' requirement." *Id.* (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982)).

Generally, "[p]rivate hospitals, doctors, and nurses are not . . . considered state actors amenable to suit under § 1983." *Sliwinski v. Maysent*, No. 3:18-cv-2653-CAB, 2019 WL 581720, at *4 (S.D. Cal. Feb. 13, 2019) (citing *Briley v. California*, 564 F.2d 849, 855-56 (9th Cir. 1977)). Courts, however, have found state action when a state has delegated its obligation to provide medical care to inmates to a private hospital or medical provider, *see McKenzie v. Jorizzo*, No. 1:13-cv-1302-AA, 2015 WL 127826, at *4 (D. Or. Jan. 6, 2015) (collecting cases); when a private hospital or physician enters into a contract with the state to provide medical care to inmates, *see McKinney v. Cty. of Imperial*, No. 18-7198, 2019 WL 384323, at *3 n.6 (C.D.

Cal. Jan. 3, 2019); when a private party has contracted with the state to provide medical care to indigent citizens, *see Sliwinski*, 2019 WL 581720, at *4 (citing *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991)); and when "a publicly financed hospital . . . leased its management and operation to a private corporation." *Chudacoff*, 649 F.3d at 1150 (citation omitted). In addition, "there is no dispute that the operation of [a public] hospital is state action." *Id.* (citation and internal quotation marks omitted).

Courts have not found that private hospitals are state actors merely because they are subject to state regulation. *See Chudacoff*, 649 F.3d at 1149 (stating that the mere fact that a private hospital is "'subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment'") (citation omitted). Nor have courts found state action when a private, non-profit hospital's "state links consist merely of receipt of federal funds under the Hill–Burton, Medicaid, and Medicare programs, and exemption from state and federal taxes." *Id.* (citation omitted).

### b. Application of Law to Fact

The Legacy Defendants argue that Plaintiffs' complaint fails adequately to allege state action. In support of their argument, the Legacy Defendants note that: (1) they are "a privately owned non-profit hospital corporation and two private individuals"; (2) Plaintiffs' complaint alleges only that Legacy Emanuel is a "non-profit public benefit corporation" that "receives federal funds"; (3) Plaintiffs' complaint indicates that the Legacy Defendants made a report to DHS, but it fails to indicate that the Legacy Defendants were the actors who deprived Plaintiffs of their custody rights; (4) Plaintiffs' complaint asserts that DHS, not the Legacy Defendants, took custody of I.S.; and (5) Plaintiffs' complaint makes "no allegations" to suggest that Dr. Coughlin or Crone are "anything other than private individuals." (Legacy Defs.' Mot. at 2, 4.)

PAGE 7 – OPINION AND ORDER

Plaintiffs argue that they have adequately alleged joint action between the Legacy Defendants and Caballero. (*See* Pls.' Resp. Legacy Defs.' Mot. at 5, arguing that the Legacy Defendants "jointly and willfully participated with" Caballero in violating Plaintiffs' rights). In support of this argument, Plaintiffs assert that the Legacy Defendants contacted DHS "with the intent 'to take emergency custody of I.S.' thereby creating the situation whereby 'I.S. received medical testing and procedures from [Legacy Emanuel] that neither parent consented to,' upon the instruction of . . . Caballero." (Pls.' Resp. Legacy Defs.' Mot. at 5.) In addition, Plaintiffs assert that the Legacy Defendants' report to DHS was not about "any statutorily defined child abuse or imminent risk" to I.S.'s health or safety. (Pls.' Resp. Legacy Defs.' Mot. at 5; *but cf.* Compl. ¶¶ 28-29, 31, suggesting DHS took custody based on a report of "medical neglect"). According to Plaintiffs, the report to DHS "was made out of frustration that Plaintiffs would not do what they wanted in a timely fashion." (Pls.' Resp. Legacy Defs.' Mot. at 5.)

"The Supreme Court has articulated four tests for determining whether a private [party's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Franklin v. Fox*, 312 F.3d 423, 444-45 (9th Cir. 2002) (citing *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997)). Plaintiffs' complaint and response brief make clear that only the joint action test is relevant here. *See id.* (same).

"The joint action test asks 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1129, 1140 (9th Cir. 2012) (quoting *Franklin*, 312 F.3d at 445). The test "can be satisfied either 'by proving the existence of a conspiracy or by showing that the private party was

a willful participant in joint action with the State or its agents.'"[5] *Id.* (citation omitted). The joint action test, however, "requires that the private parties have participated in the 'activity which deprive[d] [the plaintiffs] of constitutional rights.'" *Smith v. N. Star Charter Sch., Inc.*, 593 F. App'x 743, 744 (9th Cir. 2015) (quoting *Brunette v. Humane Soc'y of Venture Cty.*, 294 F.3d 1205, 1211 (9th Cir. 2002)); *see also Tsao*, 698 F.3d at 1140 ("Ultimately, joint action exists when the state has 'so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity.'") (citation omitted).

In assessing whether Plaintiffs have plausibly alleged joint action between the Legacy and State Defendants, the Court first reviews Oregon's mandatory reporter laws because Plaintiffs have alleged that Dr. Coughlin contacted DHS to make a report about possible medical neglect. *See Kirtley v. Rainey*, 326 F.3d 1088, 1092-95 (9th Cir. 2003) (reviewing the district court's dismissal for failure to state a claim and turning "first" to a guardian's role in custody actions under Washington law before assessing whether a state-appointed guardian ad litem acted under color of state law for purposes of § 1983). Oregon law imposes a "duty" on certain "public or private official[s]" to report "child abuse." *Pamplin Media Grp. v. City of Salem*, 293 Or. App. 755, 764 (Or. Ct. App. 2018) (citing OR. REV. STAT. § 419B.010(1)). Oregon law defines "abuse" to mean, *inter alia*, "[n]egligent treatment or maltreatment of a child, including . . . the failure to provide . . . medical care that is likely to endanger the health or welfare of the child." OR. REV. STAT. § 419B.005(1)(a). In addition, Oregon law defines "public

---

[5] Plaintiffs do not allege that the Legacy Defendants were engaged in a conspiracy with the State Defendants. (*See* Compl. ¶ 41, alleging that the Legacy Defendants were "joint participants"; *see also* Pls.' Resp. Legacy Defs.' Mot. at 5, asserting that the Legacy Defendants "jointly and willfully participated with" a DHS employee in violating Plaintiffs' constitutional rights).

PAGE 9 – OPINION AND ORDER

or private official" to include practitioners of thirty-one professions and occupations, including, but not limited to: (1) a "[p]hysician . . . licensed under ORS chapter 677," and (2) a "[r]egulated social worker." OR. REV. STAT. § 419B.005(5). "The receipt of a child abuse report triggers other provisions of [Oregon statutory law], which in turn impose various investigative duties on DHS and law enforcement agencies." *Pamplin*, 293 Or. App. at 764.

Thus, Oregon law compels licensed physicians to report an individual's failure to provide medical care that will likely endanger a child's health or welfare. The Ninth Circuit has observed that "in a case involving a private defendant, the mere fact that the government compelled a result does not suggest that the government's action is 'fairly attributable' to the private defendant." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Consistent with this direction, several federal district courts have held that merely "reporting suspected child abuse . . . does not constitute state action" for purposes of § 1983. *See Gay v. Children's Hosp. of Pa.*, 18-02880, 2018 WL 3447173, at *5 (E.D. Pa. July 16, 2018) (collecting cases and dismissing § 1983 claims on the ground that the private defendants, including a hospital and its physician, did "not become state actors solely because, as mandated reporters under state law, they reported or failed to report suspected child abuse"); *see also Doe v. Tsai*, No. 09-01198, 2010 WL 2605970, at *12 (D. Minn. June 22, 2010) ("[The doctors here] are mandatory child-abuse reporters under Minnesota law. . . . Although they were providing information to law enforcement, the doctors do not become state actors simply by operating under a state statute."); *cf. N.L. v. Children's Hosp. L.A.*, 711 F. App'x 433, 434 (9th Cir.) (reversing the district court's dismissal of § 1983 claims against private hospital and medical group because the plaintiff plausibly alleged that the defendants were "not providing medical treatment but instead w[ere] exercising [their] discretion to collaborate with county government

in the laudable endeavor of investigating child abuse, a potential crime"), *cert. denied*, 139 S. Ct. 315 (2018).

Here, Plaintiffs have not adequately alleged joint action between the Legacy and State Defendants. Plaintiffs' allegations suggest that: (1) Dr. Coughlin acted as a mandatory reporter of child abuse in reporting potential medical neglect,[6] which in turn imposed various investigative duties on DHS; (2) the State Defendants, not the Legacy Defendants, investigated Dr. Coughlin's report of medical neglect; (3) the State Defendants, not the Legacy Defendants, took custody of I.S. and continued to hold I.S. after she was treated and discharged from the hospital; (4) Caballero, an employee of DHS, instructed the Legacy Defendants to provide medical care to I.S. after Caballero took custody of her; and (5) the Legacy Defendants continued to act in their capacities as private providers of medical care until I.S. and Sawyer were discharged from the hospital. Under these circumstances, and in accordance with the authorities above, the Court concludes that Plaintiffs fail adequately to plead that the Legacy Defendants were state actors.[7] *See Gay*, 2018 WL 3447173, at *5 (explaining that courts have

---

[6] Plaintiffs argue that there was "no constitutional justification for calling DHS." (Pls.' Resp. Legacy Defs.' Mot. at 6.) Plaintiffs fail to point to any authority stating that mandatory reporters (many of whom are lay persons) must possess a "constitutional" justification for making a report to DHS, the entity charged with investigating the validity of the report. Oregon law provides that mandatory reporters are immune from liability when they participate "in good faith in making a report of child abuse and . . . ha[ve] reasonable grounds for making" the report. OR. REV. STAT. § 419B.025. Oregon law also provides that it is a Class A violation to make a report of child abuse, "knowing that the report is false." OR. REV. STAT. § 419B.016. Plaintiffs' complaint fails to allege *facts* plausibly suggesting that the Legacy Defendants knowingly made a false report, acted in bad faith, or lacked reasonable grounds for reporting medical neglect. (*See* Compl. ¶ 40, alleging, in a conclusory fashion, that there was no "emergency medical justification" for contacting DHS but failing to allege why the care provided was not medically justified).

[7] Accepting Plaintiffs' argument that the Legacy Defendants were state actors here would convert every "public or private official" listed under OR. REV. STAT. § 419B.005(5) into a state actor each time they suspect potential abuse of a child and make a report to DHS. *See Sutton*, 192 F.3d at 838 ("'Statutes and laws regulate many forms of purely private activity, such as

PAGE 11 – OPINION AND ORDER

held that "reporting suspected child abuse . . . does not constitute state action," concluding that the private hospital defendants did "not become state actors solely because, as mandated reporters under state law, they reported or failed to report suspected child abuse," and dismissing the plaintiff's § 1983 claims); *see also Sutton*, 192 F.3d at 830-35 (reviewing a motion to dismiss and stating that "[w]hen addressing whether a private party acted under color of law, [the Ninth Circuit] start[s] with the *presumption* that private conduct does not constitute governmental action") (emphasis added); *Smith*, 593 F. App'x at 744 (explaining that, under the joint action test, the private parties must have participated in the activity which deprived the plaintiff of constitutional rights).

For these reasons, the Court dismisses Plaintiffs' § 1983 claims against the Legacy Defendants. *See Nielson v. Legacy Health Sys.*, 230 F. Supp. 2d 1206, 1208-09 (D. Or. 2001) (addressing § 1983 claims arising from a state court custody decision, dismissing the plaintiff's claims against private medical facilities and their employees, and explaining that "[t]he Ninth Circuit has consistently dismissed private hospitals, doctors, and attorneys in § 1983 claims for failing to come within the color of state law") (citations omitted). The Court, however, grants Plaintiffs leave to amend their complaint because it is not "absolutely clear" that Plaintiffs cannot cure the deficiencies in their complaint by amendment. *See Daniels v. Mar*, 670 F. App'x 491, 492 (9th Cir. 2016) (holding that dismissal without leave to amend is "premature" when it is not "absolutely clear" that the deficient claims "could not possibly be cured my amendment" and therefore remanding to allow the plaintiff an opportunity to cure).

///

---

contractual relations and gifts, and subjecting all behavior that conforms to state law to the Fourteenth Amendment would emasculate the [government] action concept.'") (citation omitted).

## 2. State Law Claim

The Legacy Defendants move to dismiss Plaintiffs' third and final claim for relief, which is styled a civil rights claim brought pursuant to OR. REV. STAT. § 419B.090(4). This statute provides:

> It is the policy of the State of Oregon to guard the liberty interest of parents protected by the Fourteenth Amendment to the United States Constitution and to protect the rights and interests of children . . . . The provisions of this chapter shall be construed and applied in compliance with federal constitutional limitations on *state action* established by the United States Supreme Court with respect to interference with the rights of parents to direct the upbringing of their children, including, but not limited to, the right to . . . [m]ake health care decisions for their children[.]

OR. REV. STAT. § 419B.090(4) (emphasis added).

Plaintiffs state that their third claim for relief is a § 1983 claim. (Pls.' Resp. State Defs.' Mot. at 2-3.) Accordingly, the Court dismisses this claim against the Legacy Defendants because Plaintiffs have failed plausibly to allege that the Legacy Defendants were state actors, and because OR. REV. STAT. § 419B.090(4) provides that it must be applied in compliance with federal constitutional limitations on state action established by the United States Supreme Court.

### B. The State Defendants' Motion to Dismiss

#### 1. Section 1983 Claims Against DHS

Plaintiffs bring two § 1983 claims against the State Defendants, alleging that they violated Plaintiffs' Fourth and Fourteenth Amendment rights. The State Defendants move to dismiss Plaintiffs' § 1983 claims to the extent they name DHS as a defendant, noting that Plaintiffs' complaint does include a claim for equitable relief and arguing that DHS is protected by the Eleventh Amendment. (*See* State Defs.' Mot. at 4; *see also* Compl. at 11.) Plaintiffs argue that they filed their § 1983 claims against DHS in state court "where the claims against the state itself are valid," that the State Defendants removed this case to federal court, that DHS "should

PAGE 13 – OPINION AND ORDER

remain as defendant in this matter," and that if dismissal of DHS is appropriate, the Court should dismiss the claims against it without prejudice so they can refile in state court. (Pls.' Resp. State Defs.' Mot. at 3.)

"State agencies like DHS . . . are not 'persons' that can be sued under § 1983 . . . , and the Eleventh Amendment bars suits against them." *Robinson v. Tripler Army Med. Ctr.*, No. 05-17011, 2009 WL 688922, at *2 (9th Cir. Mar. 17, 2009) (citing *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429-31 (1997), and *Sykes v. California*, 497 F.2d 197, 201-02 (9th Cir. 1974)); *see also Howlett v. Rose*, 496 U.S. 356, 365 (1990) (explaining that a Supreme Court decision "establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court"); *Robinson*, 2009 WL 688922, at *2 (affirming the district court's dismissal of the plaintiff's § 1983 claims against state agencies, including DHS). Accordingly, the Court grants the State Defendants' motion to dismiss on this ground and dismisses Plaintiffs' § 1983 claims against DHS with prejudice.

As discussed, Plaintiffs represent that their third claim for relief, which is styled as a claim for violating OR. REV. STAT. § 419B.090(4), is brought pursuant to § 1983. (Pls.' Resp. State Defs.' Mot. at 3.) Accordingly, the Court also dismisses Plaintiffs' third and final claim against DHS as barred by the Eleventh Amendment.

### 2. Section 1983 Claims Against Caballero

The State Defendants move to dismiss Plaintiffs' second and third claims for relief against Caballero. The State Defendants argue that the Court should dismiss Plaintiffs' second claim for relief (a § 1983 claim alleging a Fourth Amendment violation) because a Fourth Amendment seizure claim belongs to the allegedly seized party (here, I.S.). (*See* Compl. ¶ 48, alleging that Defendants' "seizure of I.S." violated Plaintiffs' "Fourth Amendment right to be

PAGE 14 – OPINION AND ORDER

secure in their person against unreasonable seizures"). The Court agrees. *See, e.g.*, *Southerland v. City of N.Y.*, 680 F.3d 127, 143 (2d Cir. 2012) ("When a child is taken into state custody, his or her person is 'seized' for Fourth Amendment purposes. The child may therefore assert a claim under the Fourth Amendment that the seizure of his or her person was 'unreasonable.' A Fourth Amendment child-seizure claim belongs only to the child, not to the parent, although a parent has standing to assert it on the child's behalf."). Accordingly, the Court grants the State Defendants' motion to dismiss Plaintiffs' second claim for relief. The Court, however, grants Plaintiffs leave to amend their complaint to assert a Fourth Amendment claim on behalf of I.S.

Finally, the State Defendants move to dismiss the third claim for relief against Caballero for failure to state a claim. Plaintiffs now assert that their third claim is a § 1983 claim premised on a violation of OR. REV. STAT. § 419B.090(4). The Court dismisses Plaintiffs' third claim and grants Plaintiffs leave to amend to restyle the claim as a § 1983 claim, if they have a good faith basis for doing so. *See Markovich v. Panther Valley Sch. Dist.*, No. 13-3096, 2014 WL 3735292, at *8 (M.D. Pa. July 28, 2014) (noting that the plaintiff's opposition to motions to dismiss indicated that one his claims was intended to be a different claim, dismissing the claim, and granting the plaintiff leave to amend to assert the claim the plaintiff intended to, assuming he had "a good faith basis for doing so").

///

///

///

///

///

///

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motions to dismiss (ECF Nos. 6 and 13). If Plaintiffs elect to file an amended complaint curing the deficiencies identified herein, they shall do so within fourteen days.

**IT IS SO ORDERED.**

DATED this 3rd day of May, 2019.

_____
STACIE F. BECKERMAN
United States Magistrate Judge